BAILEY *v.* SEBASTIAN COUNTY HUMANE SOCIETY.

4-6174                                          144 S. W. 2d 716

Opinion delivered November 11, 1940.

*James B. McDonough* and *A. C. Postel,* for appellant.
*Franklin Wilder,* for appellee.

SMITH, J. Mrs. Henry Ravenscroft of California appears to be devoting her time and fortune in a national way to aiding local humane societies in the protection of dumb animals, and especially dogs. She made a substantial donation to the humane society at Texarkana to be used in building and providing shelter for unfortunate dogs. Mrs. Oliver Dreyer of Texarkana procured the donation. Mrs. Della Carr Bailey of Fort Smith, who is interested in work of this kind, visited Mrs. Dreyer and sought her intervention with Mrs. Ravenscroft to secure a donation to promote a similar work in her home town of Fort Smith. Mrs. Bailey sought also the aid of Mr. R. C. Craven who is the Regional Direc-

tor of the American Humane Association and who travels extensively over the country in the interest of humane work.

In response to a letter from Mrs. Bailey, Mrs. Ravenscroft wrote a reply in which she stated that her mother had left her some money which she had put in trust for animal purposes. Mrs. Ravenscroft further wrote: "I have got to write you fully of my wishes. I am inclosing check for $6,000 with the following instructions: You are to deposit the check in the name of your society, asking the bank not to tell anyone. You are then to get the land free and in the name of your society for life. Be sure it is in a central position and not low lying ground and easily accessible and will not have to be moved at some future date, as this must be permanent.

"I would like your society to use $5,000 on a fireproof shelter, spanish architecture as much as possible. (I am inclosing some views of a small hospital and pound in this state.) Will you return the pictures as soon as possible? You will have to get in writing from the city that they will turn over the license money for running the shelter and help you in every way possible. This has been done in all other places. By benefits, etc., sums can be had for running expenses. In your by-laws you will have to have inserted a clause saying that no animal can be taken from the society for vivisection or experimental purposes. This is very important. The remaining $1,000 is for a small animal ambulance."

It was then directed in the letter that when the shelter was completed, a memorial plaque should be placed thereon reading: "In Memory of Ellanor and Sanborn Doe San Francisco," and that a similar plaque should be placed on the ambulance.

The letter proceeded further to say: "I am sure you will do everything in your power to follow my wishes and I wish your society the utmost success.

"Will you please send me a receipt? I think if you can pledge local people for help and interest you will

find that like other places you will receive sufficient for all your running expenses.

"If there is to be discord and delay you can tell Fort Smith I withdraw my money as there are many places very keen to have me help them and co-operate."

At the time of the receipt of this letter in April, 1938, there had been organized in Fort Smith a humane society of which Mrs. Bailey was president, and we think it very clear that this donation was to the society, and not to Mrs. Bailey, for control and disbursement.

Upon the receipt of the check it was deposited to the account of "Sebastian County Humane Society, by Della Carr Bailey, President." It was deposited as a savings account, and $120 of the interest which accrued thereon was used in paying the purchase price of a 6.2-acre tract of land for use as a shelter. The deed to this land was dated April 26, 1939, and was made to the Sebastian County Humane Society. The land cost $500, all of which was paid by public subscription except the $120 of interest used for that purpose.

Friction developed between Mrs. Bailey and her husband, on the one hand, and members of the society, on the other, but they co-operated in their endeavor to induce the city of Fort Smith to appropriate funds on hand and others to be derived from the privilege tax on keeping dogs. The mayor of the city at first declined to assent to this diversion of the city's funds upon the ground that it was unauthorized. As a means to that end, there was passed, at the 1939 session of the general assembly, act No. 44, declaring humane societies for the prevention of cruelty to animals to be organizations of a public nature, for which public funds might be expended and to compel appropriations by municipalities of funds received from taxes for the privilege of keeping animals to the use of such societies.

It is said that this act 44 is a local bill, and is unconstitutional for that reason; but, even so, there was begun a test suit to determine whether the city of Fort Smith might appropriate its dog tax to the humane society, and it was decided that this might be done, and

the city dog tax was paid over to the humane society after the passage of an ordinance to that effect by the city of Fort Smith. This ordinance is still in full force and effect.

There was protracted delay in the erection of the shelter, indeed, it has not been erected even yet. This delay was due, in part at least, to the fact that Mrs. Bailey sustained a serious injury which incapacitated her for a long period of time. Upon her recovery, the friction between Mrs. Bailey and other members of the society increased, and she and they wrote letters to Mrs. Ravenscroft presenting their respective sides of the controversy. Mrs. Ravenscroft took sides with Mrs. Bailey, and has since maintained that attitude.

Under the direction of Mrs. Ravenscroft, Mrs. Bailey withdrew the deposit from the bank where it was first made, and made deposit thereof in another bank in the name of "Mrs. Henry Ravenscroft, by Della Carr Bailey." Upon being advised of this action, members of the humane society brought this suit, alleging that there had been an unauthorized appropriation of these funds, and praying that a trust be declared and that the withdrawal of the deposit be enjoined.

A number of pleadings were filed, and much testimony was taken, all of which was reviewed by the chancellor in an elaborate opinion granting the relief prayed.

Reversal of this decree is prayed upon the ground that the gift was always conditional, and that the conditions were never met. It is further insisted that the donor had the right to insist upon the performance of the conditions imposed, and had the further right to impose additional conditions at any time before the original conditions were complied with.

The chancellor found, however, that there had been a substantial compliance with the conditions; and we concur in that finding of fact.

The chief insistence is that the donor imposed the condition that the city would accept in writing the donation, and should agree, in this writing, to perform and comply with the conditions imposed.

We agree with the court below that there has been a substantial compliance with the conditions; and we are also of the opinion that Mrs. Ravenscroft is estopped from saying there was no compliance.

Through the efforts of the humane society, the site for the shelter was bought and paid for by public subscription except the $120 interest, and for this property the society has no other use. The location of the site appears to have been agreeable to all parties. Plans for the shelter were prepared and approved by Mrs. Ravenscroft. The by-laws of the society with regard to vivisection and taking animals for experimental purposes were amended in accordance with Mrs. Ravenscroft's request. No formal written agreement was executed by the city to devote its annual dog license tax to the purposes of the society; but an ordinance to that effect was passed, and is now in full force and effect. Mrs. Ravenscroft did not even propose to withdraw her donation because there had not been an exact and literal compliance with her conditions. On the contrary, upon representations to Mrs. Ravenscroft that the funds of the society were inadequate, Mrs. Ravenscroft made an additional donation of $2,500 to cover the total cost of building the shelter and other expenses. This last donation was made August 7, 1939. The letter transmitting this check requested an ''Official Receipt,'' manifesting the intention that it should be used by the society on the same conditions as the previous gift. In making this additional donation, Mrs. Ravenscroft expressed her regret that the shelter had not been erected, but she stated her recognition of the fact that there had been unavoidable delays, and she urged that the shelter be erected without further unnecessary delay. As late as September 17, 1939, Mrs. Ravenscroft wrote Mrs. Bailey that ''I do not wish it (the money) returned as the shelter must be built and if it really will start by February it is better to have it making 4 per cent. interest. Please keep plans, specifications, etc., safely in your office.''

It is very clear that Mrs. Ravenscroft now desires Mrs. Bailey to administer her donation. But she im-

posed no such condition in the original donation. She was fully advised that the funds would be administered by the humane society. While it is true that the general correspondence relating to the project was conducted by Mrs. Bailey, this was done because Mrs. Bailey was the president of the humane society. There is nothing in the record to indicate that Mrs. Ravenscroft had constituted Mrs. Bailey as her agent to administer the trust. On the contrary, we think it is clear that it was contemplated that the humane society should discharge this duty; and we agree with the chancellor that there has been a substantial compliance with the conditions of the donation, and that the title thereto has passed and now vests in the society, which professes its intention to erect and maintain the shelter, if allowed to do so.

The decree is, therefore, affirmed.

HOLT, J., not participating.